# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**REGINALD KYLES,**

    Petitioner,

    v.                                         Case No. 12-CV-835

**MICHAEL MEISNER,**
**WARDEN,**

    Respondent.

## DECISION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

Reginald Kyles ("Kyles"), a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Kyles was convicted of two counts of second-degree recklessly endangering safety, one count of substantial battery, and one count of disorderly conduct, all as an habitual criminal. (Answer, Ex. E at 2, Docket # 14-6.) He was sentenced to 16 ½ years of imprisonment followed by 13 years extended supervision. (Habeas Petition at 2, Docket # 1.) Kyles alleges that his convictions on the two counts of second-degree recklessly endangering safety and his sentence are unconstitutional.

The parties have briefed the petition for a writ of habeas corpus and the petition is ready for disposition. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

A Milwaukee County jury found Kyles guilty of two counts of second-degree recklessly endangering safety, one count of substantial battery, and one count of disorderly conduct, all as an

habitual criminal. (Docket # 14-6 at 1-2.) Kyles' charges stem from two separate incidents when Kyles and his girlfriend, Jessica Parker, were driving her car, a purple Chevy Blazer, on Interstate 43 in Milwaukee County. (*Id.* at 2.) The first incident took place in July 2007 in the late afternoon. Parker was driving her vehicle while Kyles was in the passenger seat. They got into an argument and Kyles, who had been drinking, told Parker to pull over. Parker testified that Kyles hit her in the head and face more than once as she was driving; however, later in her testimony she said she remembered Kyles hitting her while she was parked on the side of the road. (*Id.* at 2-3.) Parker suffered a cut lip that was treated with stitches at the hospital. (*Id.* at 3.)

Tina Torres-Cruz testified that she was driving on the freeway behind Parker's car at fifty miles per hour and had to swerve to the left lane to avoid hitting Parker's car, which had come to a complete stop in front of her. (Answer, Ex. H at 124, Docket # 14-9.) Torres-Cruz testified that as she drove past, she saw Kyles choking Parker. (Docket # 14-6 at 3.)

From this incident, Kyles was charged in separate counts of second-degree recklessly endangering safety as to Parker and Torres-Cruz respectively. The jury convicted him of endangering Parker but acquitted him of endangering Torres-Cruz.

The second incident took place in October 2007. (*Id.*) It was late in the evening and Parker was driving an intoxicated Kyles to her house. Parker and Kyles were again driving on Interstate 43. Kyles became angry and told Parker to pull over so that he could drive. Parker pulled the car over and got out of the car. Kyles got into the driver's seat and started driving. Parker testified that Kyles pulled away from the side of the expressway and into the lanes of traffic, driving against the flow of traffic. (*Id.*) Parker saw another car hit her car. Kyles maneuvered the car so that he was driving the

correct way and collided with another car. Kyles then drove off and an officer later found him parked on the side of the road. (*Id.*)

The driver of the first car that struck Kyles' car, Andrew Becker, testified that as he and his four passengers were driving on the expressway, he saw a purple Blazer "off to the side of the road," in the distress lane on the right. (*Id.* at 4.) Becker said that "all of a sudden, [the Blazer] just pulled out right in front of me." (*Id.*) Becker said the Blazer was "horizontal on the freeway" in between the middle and third lanes. (*Id.*) Becker "had to brake real quick, swerve off to the right, try avoiding him." (*Id.*) Becker's car struck the rear end of the Blazer, causing extensive damage to Becker's car and injuring his back. (*Id.*) After colliding with Becker's car, Becker testified the Blazer turned back towards the distress lane on the right and other cars started coming towards the Blazer. (Answer, Ex. H at 21, Docket # 14-10.) Becker witnessed "another car then either stopped behind that one or hit the Blazer, and then another car hit that car that just had hit the Blazer, stopped right in front of the Blazer." (*Id.*)

One of Becker's passengers, Cassandra Zavala, testified she first saw the Blazer on the right side of the road and then the Blazer took a left into the three lanes of oncoming traffic. (*Id.* at 7-8.) It appeared as if the Blazer was attempting "to try to do a U-turn" and although they tried to slow down, Becker's vehicle and the Blazer collided. (*Id.* at 8.) After the Blazer collided with Becker's vehicle, Zavala testified that the Blazer came to a stop in the slow lane and "then another car hit him. Another car hit that car. It was, like a chain reaction, and then it took off." (*Id.* at 9.)

Officer Robert Austin of the City of Greenfield Police Department testified that sometime after the incident he was traveling westbound on Layton Avenue and noticed the purple Blazer stopped in the far right-hand lane of traffic. (*Id.* at 63-64.) Officer Austin testified the Blazer appeared

- 3 -

to have a substantial amount of damage to the driver's side of the vehicle. (*Id.* at 64.) When Officer Austin approached the vehicle, he saw Kyles in the front seat and he appeared to be sleeping. (*Id.* at 65.) Officer Austin detected an "odor of alcoholic beverage coming from the vehicle" and believed, based on the odor of alcohol and the fact Kyles was slow to rouse and had slow and slurred speech, that Kyles was intoxicated. (*Id.* at 68-70.)

Deputy Brian Morgan of the Milwaukee County Sheriff's Department testified that he conducted an intoximeter test on Kyles and determined that his blood alcohol level was .16, which is two times the legal limit in the State of Wisconsin. (*Id.* at 82.)

Kyles was convicted of second-degree recklessly endangering safety as to Becker.

Kyles was sentenced to consecutive terms totaling 16 ½ years of initial confinement followed by 13 years of extended supervision. (Docket # 14-6 at 4.) Kyles filed a postconviction motion challenging the sufficiency of the evidence as to the two counts of second-degree recklessly endangering safety and the trial court's exercise of sentencing discretion. The trial court denied the motion. (*Id.* at 4-5.) The Wisconsin Court of Appeals upheld Kyles' convictions and the Wisconsin Supreme Court denied his petition for review. (Answer, Ex. E and Ex. G, Docket # 14-6 and 14-8.) Currently before this Court is Kyles' petition for a writ of habeas corpus.

## STANDARD OF REVIEW

Kyles' petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
- 4 -

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. *Lindh v. Murphy*, 96 F.3d 856, 870-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 746 (E.D. Wis. 2000) (quoting *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999)).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court

- 5 -

'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 120 S.Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting *Williams*, 120 S.Ct. at 1522), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

In his petition, Kyles challenges his conviction on two grounds: (1) the evidence was insufficient to sustain the convictions for second-degree recklessly endangering safety and (2) the trial court erroneously exercised its discretion at sentencing by placing undue weight on one factor and failing to adequately explain the necessity of his "excessive" sentence. (Docket # 1 at 6, 10, 12-15.) The Court addresses each in turn.[1]

---

[1] In his brief in opposition, the Respondent states that "it is apparent that Kyles failed to fairly present his claim of ineffective assistance to the Wisconsin Court of Appeals." (Resp't Br. at 12, Docket # 18.) This statement falls within the Respondent's argument that Kyles failed to fairly present a federal claim that his sentence was cruel and unusual. It is assumed this is a typographical error as Kyles has not asserted an ineffective assistance of counsel claim in his habeas petition, nor has he made an argument supporting such a claim in his principal brief. Although Kyles counters the Respondent's

- 6 -

*1. Sufficiency of the Evidence*

Kyles argues there was insufficient evidence to convict him of the two separate counts of second-degree recklessly endangering safety.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When insufficiency of evidence is asserted as the basis for a habeas petition, the petitioner must show "'upon the record evidence adduced at the trial no rational trier fact could have found proof beyond a reasonable doubt.'" *Cabrera v Hinsley*, 324 F.3d 527, 533 (7th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979)). The inquiry does not require the federal habeas court to "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Woodby v. INS*, 385 U.S. 276, 282 (1966)). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

A federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *See Jackson*, 443 U.S. at 324 n.16. Under Wisconsin law, a defendant is guilty of Second-Degree Recklessly Endangering Safety, Wis. Stat. § 941.30(2), if the State proves that: (1) the defendant endangered the safety of another human being; and (2) he did so by criminally reckless conduct. (Docket # 14-6 at 5-6.) This requires that the

---

statement in his reply brief by stating "the ineffective assistance of trial and appellate claim was presented to the Wisconsin Court of Appeals by Kyles as a pro se litigant," (Pet'r Reply Br. at 8, Docket # 19), once again, Kyles does not raise this claim in his habeas petition and thus waives it. *See Johnson v. Hulett*, 574 F.3d 428, 433 (7th Cir. 2009).

- 7 -

defendant's conduct created an unreasonable and substantial risk of death or great bodily harm to another and that the defendant was aware that his conduct created such a risk. (*Id.* at 6.)

In this case, in considering Kyles' sufficiency argument, the Wisconsin Court of Appeals used a standard consistent with *Jackson*. While the court of appeals did not cite to *Jackson*, it cited to *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-58 (1990) which pronounces a state law standard that is the functional equivalent to *Jackson*:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

(internal citation omitted). As such, the court of appeals identified the correct governing legal rule. Thus, the only issue before this Court to resolve on habeas review is whether the state court unreasonably applied that rule to the facts of Kyles' case. In making that determination, it is important to recall that in a habeas corpus proceeding, the court's review is tempered by AEDPA's deferential constraints. Kyles must show the state court's judgment either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

### 1.1 The July 2007 Incident

Regarding endangering Parker in July 2007, the court of appeals found there was evidence in the record to support the jury's verdict. It noted that there was testimony that Kyles yelled, hit, and

choked Parker while she was driving, causing her to stop suddenly in the center lane of traffic and the jury could have found that these actions constituted second-degree recklessly endangering safety. (Docket # 14-6 at 6.) The court of appeals found Parker's inconsistent testimony did not change its analysis because it was the jury's role to resolve inconsistencies in the testimony and the jury was entitled to believe Parker's initial testimony that Kyles hit her as she was driving. (*Id.*) Moreover, the court of appeals found the jury could have found Kyles choked Parker while she was driving and hit her while she was pulled over on the side of the road. (*Id.*) The court of appeals found under either theory, there was sufficient evidence to find Kyles guilty of recklessly endangering Parker's safety. (*Id.*)

Upon examining the trial record, this Court cannot conclude the court of appeals got it wrong or, more to the point, that no rational juror could find beyond a reasonable doubt that the State had met its burden on the July 2007 incident. As to this incident, Parker testified she and Kyles had gotten into a disagreement at her house. (Docket # 14-10 at 29.) After leaving the house, Parker and Kyles got into Parker's Blazer, with Parker driving, and began traveling on Interstate 43. (*Id.* at 30.)

Parker testified Kyles had been drinking and was angry and told her to pull the car over. (*Id.* at 30-31.) Parker stated Kyles then struck her while she was driving on the freeway. (*Id.* at 32.) She further testified the injury to her lip required several stitches. (*Id.*) Despite the testimony that Kyles struck her while she was driving, Parker also testified that Kyles' striking her did not make it difficult for her to drive "while he did it because I was pulled over, but it was kind of difficult after." (*Id.* at 34.) Parker testified she had been driving around fifty or fifty-five miles per hour. (*Id.* at 32.)

Torres-Cruz testified she was driving behind Parker's vehicle and Parker's vehicle "came to a complete stop" in front of her, causing her to "swerve to the left to avoid hitting them." (Answer,

- 9 -

Ex. H at 122-23, Docket # 14-9.) Torres-Cruz had been driving at about fifty miles per hour at the time. (*Id.* at 124.) She further testified she saw "the female driver being choked." (*Id.* at 123.) Torres-Cruz called 911 to report what had happened. (*Id.* at 122.)

In the face of this evidence, Kyles makes several arguments challenging the sufficiency of the evidence. First, he argues there were inconsistencies in Parker's testimony regarding whether the car was moving or was stopped at the time Kyles hit her. Kyles points to Parker's testimony that she ultimately stopped in the distress lane when she was hit and thus her driving was not affected. (Pet'r Br. at 13-14, Docket # 3.) Second, he argues Torres-Cruz testified she saw Kyles choking Parker, but did not see Kyles hitting Parker. (*Id.* at 14.) Parker did not testify Kyles choked her. (*Id.*) Third, Kyles also asserts that because the jury found him not guilty of endangering Torres-Cruz, it should not have found that Kyles endangered Parker. (*Id.*) Finally, Kyles argues there was insufficient evidence to convict him of recklessly endangering safety because there was no evidence Parker suffered any permanent or protracted loss or suffered great bodily harm. (*Id.* at 14-15.) These arguments notwithstanding, Kyles fails to show that the court of appeals unreasonably applied *Jackson* in finding the evidence sufficient for his second-degree recklessly endangering safety conviction regarding the July 2007 incident.

To begin, it was the role of the jury to resolve any inconsistencies in the witnesses' testimony. In other words, it was for the jury to determine whether Parker was hit while driving as she first testified, or whether she was hit while parked as she later testified. As the court of appeals correctly summarized it: "[t]he jury was entitled to believe Parker's initial testimony that Kyles hit her as she was driving. Moreover, the jury could have found that Kyles choked Parker while she was driving and hit her when she was pulled over on the side of the road. Under either theory, there was

- 10 -

Case 1:12-cv-00835-NJ   Filed 03/06/13   Page 10 of 18   Document 20

sufficient evidence to find Kyles guilty of reckless [sic] endangering Parker's safety." (Docket # 14-6 at 6.)

Likewise, it was the jury's duty to consider and weigh evidence on each count separately. Consequently, that the jury acquitted Kyles of endangering Torres-Cruz does not undermine their finding that Parker was endangered. As stated above, the ultimate decision as to which version of events to believe was the decision of the jury. For habeas review, it is sufficient that viewing the evidence in the light most favorable to the State, there was evidence for a rational jury to find the essential elements of second-degree recklessly endangering safety beyond a reasonable doubt.

Finally, as Kyles acknowledges, a conviction for second-degree recklessly endangering safety does not require proof of actual harm. (Pet'r Br. at 17.) The State was only required to prove that Kyles' conduct created an unreasonable and substantial risk of death or great bodily harm to another, not that death or great bodily harmed occurred. Thus, the fact that Kyles' battery of Parker only resulted in stitches to her lips is beside the point. There was sufficient evidence for the jury to conclude based on either Torres-Cruz's testimony or Parker's initial testimony that Kyles hit Parker as she was driving on the freeway during afternoon traffic, that he created an unreasonable and substantial risk of death or great bodily injury to Parker.

Accordingly, the Court finds that the court of appeals' determination as to the July 2007 incident was not an unreasonable application of *Jackson*.

### 1.2 The October 2007 Incident

Regarding endangering Becker in October 2007, the court of appeals found that viewing the evidence in the light most favorable to the State and the conviction, the jury could have inferred that "when Kyles abruptly drove his car onto the expressway, traveling either perpendicular to the direction of the oncoming cars or heading straight for them, he knew that he had 'created an

- 11 -

Case 1:12-cv-00835-NJ   Filed 03/06/13   Page 11 of 18   Document 20

unreasonable and substantial risk of death or greatly bodily harm to' drivers in the oncoming cars, including Becker." (Docket # 14-6 at 7) (quoting Wis JI-Criminal 1347). The court of appeals further found the fact Kyles fled from the scene after colliding with the two cars also supports such a finding. (*Id.*)

Here too, Kyles has not shown that the court of appeals unreasonably applied *Jackson* in finding the evidence sufficient for Kyles' conviction regarding the October 2007 incident. Kyles' argument that the evidence merely shows at most that he "pulled out into traffic without looking rather than traveling against traffic" is not persuasive. By this argument, Kyles suggests that the evidence only showed a traffic violation but did not rise to the level of criminally reckless conduct. The trial record shows otherwise. Parker testified Kyles was intoxicated when he ordered her to pull over to the side of the road so he could drive the Blazer. (Docket # 14-10 at 42.) Parker also testified Kyles was driving against traffic when he pulled back onto the road from the distress lane on Interstate 43 and struck Becker's vehicle. (*Id.* at 45.) Similarly, Zavala testified that the Blazer took a left into the three lanes of oncoming traffic. (*Id.* at 7.)

Becker testified the Blazer "all of a sudden . . . just pulled out right in front of me." (*Id.* at 17.) He further testified the Blazer was "horizontal on the freeway and in between, like, the third - - middle lane, about. And then I had to brake real quick, swerve off to the right, try avoiding him, and my front driver's side end hit his back driver's side end." (*Id.* at 18.) Becker was traveling at about sixty miles per hour when this happened. (*Id.* at 22.) Thus, whether the jury concluded that Kyles was going against traffic as Parker and Zavala testified, or horizontally on the freeway as Becker testified, there was ample evidence for a rational jury to find that Kyles' conduct rose to the level of criminal recklessness.

- 12 -

Case 1:12-cv-00835-NJ   Filed 03/06/13   Page 12 of 18   Document 20

Kyles' contention that the evidence failed to show that he was aware of the risk he was creating by his actions is equally unpersuasive. The evidence showed after Kyles struck Becker's vehicle, he left the scene and an officer found him sometime later in the vehicle parked in the far right-hand lane on the freeway. (*Id.* at 9, 48, 63-67.) The court of appeals correctly found that Kyles' flight from the scene showed that he knew that he had "created an unreasonable and substantial risk of death or great bodily harm," citing *State v. Bettinger*, 100 Wis. 2d 691, 698, 303 N.W.2d 585 (1981) ("It is generally acknowledged that evidence of criminal acts of an accused which are intended to obstruct justice or avoid punishment are admissible to prove a consciousness of guilt of the principal criminal charge."). (Docket # 14-6 at 7-8.)

As such, the Court finds that the court of appeals' determination as to the October 2007 incident was also not an unreasonable application of *Jackson*. Kyles is, therefore, not entitled to habeas relief on this ground.

*2. Sentencing Issues*

Next, Kyles argues the trial court erroneously exercised its discretion in sentencing him to the maximum sentence on the two counts of second-degree recklessly endangering safety by placing undue weight on one factor and failing to adequately explain the basis for imposing the maximum sentence for both counts of second-degree recklessly endangering safety. (Pet'r Br. at 17.) The court of appeals rejected this argument, finding the trial court properly considered a variety of factors in sentencing Kyles, including the facts of the crime, Kyles' past criminal history, his potential for rehabilitation, and the danger he posed to the community, as well as positive characteristics, such as Kyles' attainment of a GED. (Docket # 14-6 at 9.)

To the extent Kyles challenges the trial court's sentencing determination on the grounds it placed undue weight on one factor and failed to adequately explain the basis for its sentence, these claims involve issues of state law and thus are not cognizable claims for habeas relief. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997) (internal citation and quotation omitted) (finding that a federal habeas court will not normally review a state sentencing determination which falls within the statutory limit).

Kyles also asserts that his sentence is excessive and violates his Eighth Amendment right against cruel and unusual punishment. (Pet'r Br. at 6, 24.) A court will review a challenge to a state sentencing determination if the petitioner shows that the sentencing court lacked jurisdiction to impose the sentence or committed a constitutional error making the sentence fundamentally unfair. *Koo*, 124 F.3d at 875. A sentence violates the Constitution if it is extreme and grossly disproportionate to the crime. *Id.*

The respondent argues Kyles procedurally defaulted his Eighth Amendment claim by failing to fairly present the claim to the Wisconsin Court of Appeals. (Resp't Br. at 12.) For a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). In dealing with this issue, courts "have sought to avoid hypertechnicality and to enforce the Supreme Court's mandate in light of its purpose-to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue." *Id.* A petitioner need not cite "book and verse of the federal constitution" to present a constitutional claim. *Id.* (internal citation and quotations omitted).

To determine whether a constitutional issue has been fairly presented, the court considers

four factors: 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Ward v. Jenkins*, 613 F.3d 692, 696-97 (7th Cir. 2010).

At the outset, Kyles' briefs before the Wisconsin Court of Appeals and his petition for review before the Wisconsin Supreme Court were drafted by an attorney. Thus, the Court need not liberally construe the petition as it would if the briefs were drafted by Kyles acting *pro se*. *See id.* at 697. In his briefs before the court of appeals, Kyles does not mention the Eighth Amendment or cruel and unusual punishment, nor does he discuss or cite to any federal cases engaging in a constitutional analysis of an excessive sentence in violation of the Eighth Amendment. Kyles does cite *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971), which briefly addresses in a concurring opinion the fact an excessive sentence may constitute a violation of the Eighth Amendment; however, Kyles does not cite *McCleary* for this proposition. (Answer, Ex. C at 13, Docket # 14-4.)

Nonetheless, before the court of appeals, Kyles did argue his sentence was "excessive" and that he was convicted of less serious felonies, but received a sentence commensurate with much more serious felonies and behaviors and the "punishment simply does not fit the crime."(Answer, Ex. A at 13, 16, 17, Docket # 14-2); (Answer, Ex. C at 13, 17, 18, Docket #14-4.). Additionally, in his petition for review before the state supreme court, Kyles included the same language and citations as in his briefs before the court of appeals, but also mentions the Eighth Amendment by name. (Answer, Ex. F at 6, Docket # 14-7.) The use of this language arguably "rais[es] a constitutional red flag and call[s] to mind the Eighth Amendment's prohibition against cruel and unusual punishment."

*See Bocian v. Godinez*, 101 F.3d 465, 470 (7th Cir. 1996) (finding fair presentment of Eighth Amendment issue when petitioner argued to the Illinois Appellate Court his sentence was of "grossly excessive severity" and was "disproportionate to the crime committed").

Further, the court of appeals addressed, and rejected, Kyles' argument that his sentence was excessive, finding the trial court properly considered such factors as the fact Kyles endangered people on the freeway on two separate occasions, his criminal history, and his poor response to previous incarceration. (Docket # 14-6 at 12.) Thus, the Court finds Kyles properly presented his claim before the state courts and thus has not procedurally defaulted the claim.

However, his Eighth Amendment claim fails on the merits. The Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime. *Solem v. Helm*, 463 U.S. 277, 288 (1983). The Supreme Court has held that reviewing courts "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Id.* at 290. Further, "'in non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion.'" *Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000) (quoting *United States v. Vasquez*, 966 F.2d 254, 261 (7th Cir. 1992)).

Kyles has presented no Supreme Court authority indicating the imposition of the maximum sentence for two counts of recklessly endangering safety violates cruel and unusual punishment. *See Bocian*, 101 F.3d at 473. The trial court considered the factors articulated in *State v. Odom*, 2006 WI App 145, ¶ 7, 294 Wis. 2d 844, 720 N.W.2d 695, when rendering its decision. The court of appeals reviewed the factors considered by the trial court in sentencing Kyles and ultimately concluded his

- 16 -

Case 1:12-cv-00835-NJ    Filed 03/06/13    Page 16 of 18    Document 20

sentence was not unduly harsh or excessive. Thus, the court of appeals followed the dictates of the United States Supreme Court articulated in *Solem* in upholding Kyles' sentence. For these reasons, Kyles is not entitled to habeas relief on this ground.

**CERTIFICATE OF APPEALABILITY**

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n. 4).

In this case, reasonable jurists would not find the Court's decision to deny the petition debatable or wrong. First, as to the sufficiency of the evidence claim, it is not debatable the Wisconsin Court of Appeals identified the correct governing legal rule in citing *Poellinger*, which pronounces a state law standard that is the functional equivalent to *Jackson*. Further, it is not debatable that the court of appeals did not unreasonably apply the *Jackson* rule to the facts of Kyles' case.

As to the Eighth Amendment claim that his sentence was excessive, the sentencing court properly considered multiple factors, in accordance with *Odom*, and the court of appeals reviewed the trial court's decision and ultimately deferred to its finding, which is consistent with *Solem*. Reasonable jurists would not find this decision debatable or wrong.

- 17 -

Case 1:12-cv-00835-NJ   Filed 03/06/13   Page 17 of 18   Document 20

For these reasons, the Court will deny Kyles a certificate of appealability as to both issues.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of March, 2013.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge